UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONSTANCE L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00495-MJD-SEB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Constance L. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in February 2019, alleging an onset of disability as of June 10, 2016. [Dkt. 14-5 at 2, 4.] Claimant's applications were denied initially and again upon

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

reconsideration, and a hearing was held before Administrative Law Judge Gladys Whitfield ("ALJ") on August 27, 2020. [Dkt. 14-2 at 13-52.] On September 24, 2020, ALJ Whitfield issued her determination that Claimant was not disabled. [Dkt. 14-3 at 54.] The Appeals Council then denied Claimant's request for review on January 8, 2021. [Dkt. 14-2 at 2.] On March 4, 2021, Claimant timely filed her Complaint in this Court seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Whitfield first determined that Claimant had not engaged in substantial gainful activity since her alleged onset date of June 10, 2016. [Dkt. 14-3 at 60.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease of lumbar and cervical spine, osteoarthritis, depression, bipolar disorder, and obesity." [Dkt. 14-3 at 60.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. [Dkt. 14-3 at 61.] ALJ Whitfield then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The claimant can occasionally climb ramps and stairs, as well as balance, stoop,

>kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds. Can perform occasional overhead reaching. She can frequently reach forward, sideways, and push or pull as well as handle, finger, and feel. She cannot perform any job requiring operation of foot controls. She cannot perform complex written or verbal communications or complex decision making. She is limited to simple, routine, repetitive tasks that is short cycle work, where the same routine tasks are performed over and over according to set procedures, sequence, or pace, with little opportunity for diversion or interruption. She cannot perform tandem tasks, teamwork, fast-paced, or have assembly line production requirements. She can have occasional, superficial interaction with the general public as well as occasional, routine workplace changes. She can tolerate normal supervisory interactions including, for example, performance appraisals, corrections, instructions, and directives as necessary. She can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. She can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. She can interact as needed with supervisors, peers, and the general public sufficiently for task completion and without the need for special supervision.

[Dkt. 14-3 at 63.]

At step four, ALJ Whitfield found that Claimant was capable of performing her past relevant work as an inspector packager (DOT 559.687-074), and that such work did not require the performance of work-related activities precluded by the above RFC. [Dkt. 14-3 at 68.] The ALJ then made the "alternative finding" that there are also other jobs existing in the national economy that Claimant is able to perform, such as light assembler (DOT 729.684-054), folder (DOT 369.687-018), machine tender (DOT 569.686-046), bencher assembler (DOT 726.685-066), inserter (DOT 713.687-026), and parts checker (DOT 669.687-014). [Dkt. 14-3 at 69-70.] Accordingly, ALJ Whitfield concluded that Claimant was not disabled. [Dkt. 14-3 at 70.]

## IV. Discussion

Claimant advances two arguments in support of her request to reverse ALJ Whitfield's decision. She argues that the ALJ erred by (1) failing to properly address Claimant's impairments at step two, and (2) failing to properly evaluate the medical opinion provided by Claimant's longtime therapist. [Dkt. 16.] The Commissioner responds that the ALJ did not err and based her

4

decision upon substantial evidence. [Dkt. 18.] For the reasons detailed below, the Court agrees with Claimant that the ALJ's determination is erroneous and requires remand.

**A. The ALJ Erred at Step Two by Mischaracterizing Evidence and Failing to Consider the Entire Record**

Claimant first argues that ALJ Whitfield's assessment at step two is erroneous. [Dkt. 16 at 25.] Step two of the disability determination requires the ALJ to assess whether the claimant has any medically determinable impairments based on objective medical evidence. 42 U.S.C. § 423(d); 20 CFR § 404.1520(a)(4)(ii); 20 CFR § 404.1521. The ALJ must then categorize each impairment as "severe" or "non-severe," which depends on whether the impairment, either individually or in combination with other impairments, "significantly limits [the claimant's] physical or mental ability to do basic work activities" or not. 20 CFR § 404.1520(c); 20 CFR § 404.1522. The ALJ is required to "consider the combined effect of all [of the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 CFR § 404.1523(c). Here, ALJ Whitfield found that Claimant was severely impaired by her degenerative disc disease of the lumbar and cervical spine, osteoarthritis, depression, bipolar disorder, and obesity. [Dkt. 14-3 at 60.] The ALJ found that Claimant's asthma, syncope, and tremors were non-severe impairments. [Dkt. 14-3 at 60.] However, this determination is erroneous for two reasons.

First, the ALJ's findings are not entirely accurate. For example, Claimant has never been diagnosed with bipolar disorder. Indeed, the sole mentions of bipolar disorder in the record come from an initial psychiatric assessment in which Hector Diez, MD, noted that "[s]ymptoms of Bipolar disorder were explored and negative," [Dkt. 14-7 at 100], and from the State agency evaluations which stated that Claimant had a severe impairment in the "Depressive, Bipolar, and Related Disorders" category, [Dkt. 14-3 at 6, 32]. As Claimant appropriately highlights, the

5

ALJ's inexplicable finding that Claimant had the severe impairment of bipolar disorder "elicits serious questions regarding the ALJ's assessment of the evidence and of the decision as a whole." [Dkt. 16 at 25.] At the very least, the ALJ has failed a build "logical bridge" between the evidence and her conclusions. *Varga*, 794 F.3d at 813.

Similarly, Claimant doesn't just suffer from "depression," as ALJ Whitfield states. Rather, Claimant has consistently been diagnosed with and medicated for "major depressive disorder, recurrent, severe with psychotic symptoms"—a clinical finding that appears at least 29 times in the record. *See*, *e.g.*, [Dkt. 14-7 at 106, 117, 152, 182, 35, 201, 81, 343]. It appears that the ALJ mischaracterized Claimant's major depressive disorder, recurrent, severe with psychotic symptoms as simply "depression," but "as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves").

Second, the ALJ omitted significant evidence of additional impairments. Despite appearing as medical diagnoses numerous times in the record, ALJ Whitfield did not mention Claimant's chronic pain or fibromyalgia, *see* [Dkt. 14-7 at 106, 117, 152, 182, 34, 44, 81, 342, 18; Dkt. 14-8 at 112]; neurosis, anxiety, generalized, *see* [Dkt. 14-7 at 106, 117]; sciatica, *see* [Dkt. 14-7 at 81; Dkt. 14-8 at 33, 41, 96, 112, 118, 127, 137, 139, 149]; or lumbar radiculitis, *see* [Dkt. 14-8 at 156, 174]. The ALJ thus made no findings as to whether these diagnoses constituted severe or non-severe impairments, alone or combined. *See Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1004 (N.D. Ill. 2008) ("Even impairments that are not severe on their own must be

considered because the combination of impairments may be severe.") (citing 20 CFR § 404.1523). Instead, the ALJ impermissibly chose to ignore multiple lines of evidence. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("An ALJ may not ignore entire lines of evidence.") (citing *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)).

The only point at which ALJ Whitfield arguably considered the combined effect of all of Claimant's impairments is her blanket statement that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." [Dkt. 14-3 at 63.] However, "[s]uch 'boilerplate' assertions do not suffice to demonstrate that the ALJ truly considered all of the evidence of record or considered the combined effect of [Claimant's] impairments." *Ridinger*, 589 F. Supp. 2d at 1004. The ALJ's lack of articulation and failure to consider the entire record leaves this Court unable to perform an informed review of her decision. *Zurawski*, 245 F.3d at 888.

Ultimately, there is no indication that the ALJ fulfilled her duty to consider all of the relevant evidence at step two because she mischaracterized evidence related to Claimant's mental impairments and failed to articulate any analysis of Claimant's chronic pain, fibromyalgia, neurosis, anxiety, sciatica, or lumbar radiculitis, either individually or in combination. Because the "scope and severity" of a claimant's impairments evaluated at step two lays the foundation for the ALJ's remaining determinations, including the claimant's RFC as well as the questioning posed to the vocational expert, "remand is warranted where the ALJ fails to consider the entirety of the evidence at Step Two." *Ridinger*, 589 F. Supp. 2d at 1005 (citing *Unger v. Barnhart*, 507 F. Supp. 2d 929, 939 n.3 (N.D. Ill. 2007)). That is the case here, and therefore remand is necessary.

### B. The ALJ Did Not Properly Evaluate the Medical Opinion of Claimant's Longtime Therapist

Claimant additionally argues that the ALJ erroneously evaluated the opinion of Mackenzie Hamm, Claimant's treating therapist of over three years.[3] [Dkt. 16 at 31.] When evaluating medical opinions, the ALJ must consider the supportability of the opinion, the consistency of the opinion, the source's relationship with the claimant, and the source's specialization. 20 CFR § 404.1520c(c). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

From May 2017 to August 2020, LCSW Hamm treated Claimant at least 75 times in various respects. That treatment included weekly cognitive behavioral therapy sessions beginning in October 2018. On August 19, 2020, LCSW Hamm completed a Mental Impairment Questionnaire, in which she reported, in relevant part, the following:

- Claimant's mental health diagnosis was major depressive disorder, recurrent, severe with psychotic symptoms;
- Claimant had engaged in therapy, psychotropic medication, skill building, and case management, from which Claimant found minimal-to-fair benefits;
- Clinical findings included chronic and persistent low mood, low motivation, hallucinations, and poor self-esteem that interfere with Claimant's ability to work;

---

[3] There appears to be some slight confusion regarding Mackenzie Hamm's identity. To clarify: Mackenzie *Moore*, OBHP, acted as Claimant's Care Coordinator at Eskenazi Health beginning in May 2017. *See* [Dkt. 14-7 at 97]. In May 2018, her credentials changed to QBHP. [Dkt. 14-7 at 206.] She became a Licensed Social Worker in September 2018, [Dkt. 14-7 at 239], and began providing cognitive behavioral therapy to Claimant in October 2018, [Dkt. 14-7 at 251]. In August 2020, she completed a Mental Impairment Questionnaire, which she signed Mackenzie *Hamm*. [Dkt. 14-8 at 194.] The Court will therefore refer to her as LCSW Hamm.

- Signs and symptoms include anhedonia or pervasive loss of interest in almost all activities, decreased energy, blunt, flat, or inappropriate affect, generalized persistent anxiety, persistent disturbances of mood or affect, difficulty thinking or concentrating, emotional withdrawal or isolation, and sleep disturbances;
- Claimant has a history of multiple physical symptoms of several years' duration beginning before age 30 that have caused her to take medicine frequently, see a physician often, and alter life patterns significantly;
- Claimant is "seriously limited, but not precluded," in her abilities to respond appropriately to changes in a routine work setting and deal with the stress of semiskilled and skilled work;
- Claimant is "unable to meet competitive standards" in her ability to maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and deal with normal work stress;
- Claimant has "no useful ability to function" in her ability to perform at a consistent pace without an unreasonable number and length of rest periods;
- Claimant's depression, anxiety, and psychotic features exacerbate her chronic pain related to fibromyalgia, sciatica, and back pain;
- Claimant's extreme, chronic pain has limited her mobility severely; and
- Claimant would likely be absent from work more than four days per month due to her impairments or treatment.

[Dkt. 14-8 at 194-200.] LCSW Hamm also reported that Claimant had a moderate limitation in her ability to understand, remember, or apply information; a moderate limitation in her ability to

interact with others; a marked limitation in her ability to concentrate, persist, or maintain pace; and a moderate limitation in her ability to adapt or manage herself. [Dkt. 14-8 at 199.]

In evaluating LCSW Hamm's opinion, ALJ Whitfield stated as follows:

> The undersigned finds the residual functional capacity opinion by Mackenzie Hamm unpersuasive. She noted the claimant had marked limitation in [sic] concentrate, persist or maintain pace. However, a mental status examination showed the claimant's concentration was intact. Hamm also found the claimant would need to be absent more than four days per month. She stated that the claimant has persistent low mood, low motivation, hallucinations, and poor self-esteem, which interferes with her ability to work (Ex.C7F). However, a mental status examination in September 2019 only showed occasional hallucinations and it showed the claimant was oriented to person, place, and time (Ex.C6F/47). Accordingly, the undersigned is not persuaded the claimant requires further limitations than those enumerated in the residual functional capacity.

[Dkt. 14-3 at 68.]

The ALJ's rationale here is woefully deficient and certainly does not provide good reasons for rejecting LCSW Hamm's opinion. Essentially, ALJ Whitfield uses two mental status examinations—the first of which, she fails to cite—to discredit at least 75 treatment encounters, amounting to hundreds of pages of medical evidence, between Claimant and LCSW Hamm since May 2017. The exam the ALJ does cite to, a progress note completed by Adeel Ansari, MD, cannot suffice to undercut the entirety of LCSW Hamm's own treatment records, which the ALJ fails to discuss. ALJ Whitfield does not explain how occasional hallucinations and being oriented to person, place, and time is contrary to LCSW Hamm's opinion, especially when the record is replete with support for LCSW Hamm's findings. See *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result"). In fact, that same treatment note from Dr. Ansari documents Claimant's apathetic mood and blunted and constricted affect—findings that support LCSW Hamm's opinion which ALJ Whitfield did

10

not acknowledge. Moreover, the ALJ fails to consider LCSW Hamm's specialization, lengthy treating relationship with Claimant, and the supportability and consistency of her opinion. 20 CFR § 404.1520c(c). These errors require remand.

Additionally, Claimant alerts the Court to another issue regarding the ALJ's evaluation of opinion evidence relating to Claimant's ability to concentrate, persist, or maintain pace. LCSW Hamm opined that Claimant had a marked limitation in her ability to concentrate, persist, or maintain pace, but the ALJ found this opinion "unpersuasive." Conversely, ALJ Whitfield found the State agency consultant opinions to be "persuasive." [Dkt. 14-3 at 67.] As relevant here, the State agency psychologists found that Claimant had a moderate limitation in her ability to concentrate, persist, or maintain pace. [Dkt. 14-3 at 7, 33.] Despite this, ALJ Whitfield, without explanation, determined that Claimant's ability to concentrate, persist, or maintain pace was only mildly limiting. [Dkt. 14-3 at 62.] This, too, must be corrected on remand.

## V.  Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

SO ORDERED.

Dated:  30 MAR 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.